O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| CANDIDO GAYTAN-ORTIZ, § | |
| § | |
| *Petitioner*, § | |
| § | |
| v. § | Civil Action No. 5:06-cv-97 |
| § | Criminal No. 5:04-cr-616 |
| UNITED STATES, § | |
| § | |
| *Respondent*. § | |
| § | |

# OPINION & ORDER

Pending before the Court is Petitioner Candido Gaytan-Ortiz's [Petition for] Original Writ of Habeas Corpus. [Dkt. No. 1]. Although it was docketed as a petition brought pursuant to 28 U.S.C. § 2241, it expressly invokes 28 U.S.C. § 2255. Additionally, the argument Petitioner presents is not cognizable under § 2241. Accordingly, the Court treats Ortiz's Petition as a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.[1]

Petitioner's only argument is that the sentencing court treated the Federal Sentencing Guidelines as mandatory, rather than advisory, in contravention of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). In other words, Petitioner claims so-called "Fanfan error."[2] *United States v. Walters*, 418 F.3d 461, 463-64 (5th Cir. 2005).

---

[1] A court may not re-characterize a habeas petition without first notifying the petitioner that the Court intends to do so, and of the corresponding consequences. *Castro v. United States*, 540 U.S. 375, 383 (2003). It is clear that Petitioner, despite his cover page, relies on § 2255, not on § 2241, and thus the Court need not "re-characterize" his Petition. Additionally, the aforementioned limitation applies only when the petitioner proceeds *pro se*, *id.*, which Gaytan-Ortiz does not, [Dkt. No. 1 at 10].

[2] To be distinguished from the more commonly claimed "Booker error," whereby a sentencing court imposes a sentence beyond the statutory maximum based on facts neither alleged in the indictment nor admitted by the defendant. *See United States v. Mares*, 402 F.3d 511, 518 (5th Cir. 2005) (citing *Booker*, 543 U.S. at 244).

It is well established that a direct attack on a sentencing court's application of the Guidelines is not cognizable in the § 2255 context. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Rather, collateral attack is reserved for "constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed." *Id.* Petitioner could have argued Fanfan error on direct appeal, as *Booker* had already been decided when his appeal was pending before the Fifth Circuit. He failed to do so.

Of course, claims of ineffective assistance of counsel are common in § 2255 petitions; most petitioners simply convert claims of faulty process or sentencing court error into claims of ineffective assistance via counsel's failure to object. Petitioner, however, fails to do this. Although *pro se* petitioners are held to a relatively forgiving pleading standard, *Haines v. Kerner*, 404 U.S. 519 (1972), Petitioner is not prosecuting his collateral attack *pro se*, and therefore the Court will not read into his Petition a claim not expressly advanced, *see Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) (reading into a habeas petition a claim not expressly asserted only because the petitioner proceeded *pro se*).

Even if Petitioner had packaged his argument as one of ineffective assistance, that claim ultimately would not have established his right to re-sentencing. To prove ineffective assistance, Petitioner would be required to show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Petitioner suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Because *trial* counsel cannot be deemed ineffective for failing to make an argument which, at the time, had no basis in precedent, *see Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972) ("counsel's inability to foresee future pronouncements which will dispossess the court of power to impose a particular

2

sentence which is presently thought viable does not render counsel's representation ineffective."); *United States v. Etheridge*, 2005 U.S. Dist. Lexis 36302 (N.D. Tex. 2005) ("at the time defendant was sentenced, *Booker* had not yet been determined. Consequently, counsel cannot be shown to be deficient to raise [sic] any Booker-type objection at sentencing."), Petitioner would need to show that he was prejudiced by *appellate* counsel's failure to argue Fanfan error on direct appeal.

The record makes two things clear. First, the sentencing court treated the Guidelines as mandatory—this is presumable because Petitioner was sentenced before *Booker* was decided, at which time adherence to the Guidelines was required. Second, at the time *Booker* was handed down, Petitioner's sentence was pending direct appeal. Notwithstanding these two realities, appellate counsel failed to argue Fanfan error before the Fifth Circuit. That failure was professionally unreasonable.

In order to show prejudice, Petitioner would have to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, Petitioner would have to show that there is a reasonable probability that the Court of Appeals would have ruled in his favor. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.*

Importantly, when an objection to Fanfan error is not preserved at sentencing it is subject to plain-error review on appeal pursuant to Federal Rule of Criminal Procedure 52(b). *See also United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005); *United States v. Pineiro*, 410 F.3d 282 (5th Cir. 2005). Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Consistent

3

with the language of the Rule, the Supreme Court has interpreted it to require (1) error; (2) that is "plain;" which (3) affects substantial rights. *United States v. Olano*, 507 U.S. 725, 731 (1993).

First, the sentencing court treated the Guidelines as mandatory—this is presumable because Petitioner was sentenced before *Booker* was decided, at which time adherence to the Guidelines was required. Second, "it is clear after *Booker* that application of the Guidelines in the mandatory form constitutes error that is plain," thus satisfying the second prong of the analysis. *Walters*, 418 F.3d 464.

The only remaining issue is whether the Fifth Circuit would have found that the sentencing court's error "affected" Petitioner's "substantial rights." To make this showing, Petitioner on direct appeal would have been required to demonstrate that "the error 'affected the outcome of the district court proceedings' such that there is a probability of error 'sufficient to undermine confidence in the outcome.'" *United States v. Mendoza-Sanchez*, 456 F.3d 479, 484 (5th Cir. 2006) (quoting *United States Valenzuela-Quevedo*, 407 F.3d 728, 732 (5th Cir. 2005)); *see also Pineiro*, 410 F.3d at 285 (noting that a sentence will not be disturbed, even if the result of a misapplication of the Guidelines, unless the defendant can show that the error affected the sentence he actually received.); *United States v. Walters*, 418 F.3d 461, 463 (5th Cir. 2005) (same).

The transcript of Petitioner's sentencing hearing does not indicate that the sentencing judge, had he believed the Guidelines advisory, would have imposed a more lenient sentence.[3] As such, it is clear that Petitioner, had counsel argued Fanfan error on appeal, could not have

---

[3] The only aspect of the sentencing transcript possibly supporting such a conclusion is the fact that the court sentenced Petitioner to the lowest possible sentence per the applicable Guideline range. [Sentencing Tr. at 3-4]. However, "the fact that the sentencing judge imposed the minimum sentence under the Guideline range . . . alone is no indication that the judge would have reached a different conclusion under an advisory scheme." *United States v. Bringier*, 405 F.3d 310, 318 n.4 (5th Cir. 2005).

4

satisfied the substantial rights prong of the plain-error test. This reality brings the analysis full circle to the underlying prejudice inquiry; per *Strickland*, there is no "reasonable probability that, but for counsel's unprofessional errors, the result of" Petitioner's direct appeal "would have been different."

Despite the inadequacy of the aforementioned claim, the Court is compelled to express concern about Petitioner's direct appeal.

Petitioner's appellate counsel is the same attorney who now represents Petitioner on collateral attack. Interestingly, counsel states in the "Background" section of the Petition that "[n]o timely [d]irect [a]ppeal was ever filed on behalf of Petitioner." [Dkt. No. 1 at 5]. This is not true. In fact, it is a lie.[4] Present counsel himself timely filed a Notice of Appeal on Petitioner's behalf. [Dkt. No. 14]. Not only did counsel fail to pursue the Fanfan issue on appeal, he failed to prosecute the appeal altogether. On December 8, 2004, the appeal was dismissed for want of prosecution. [Dkt. No. 18]. The appeal was subsequently reinstated but, on June 23, 2005, the Court of Appeals again dismissed Petitioner's direct appeal for want of prosecution; counsel "failed to timely [file] appellant's brief and record excerpts." [Dkt. No. 25].

Of course, the Court does not know what specific circumstances caused this failure—perhaps some event beyond counsel's control. However, when an attorney fails to file a notice of appeal upon request, the defendant suffers ineffective assistance of counsel, regardless of whether the basis for appeal would have had merit. *Peguero v. United States*, 526 U.S. 23, 28 (1999) (quoting *Rodriquez v. United States*, 395 U.S. 327 (1969)). This Court sees no

---

[4] The Court hesitates to be so blunt. However, "[s]omething is . . . wrong when we attempt to 'flower' the word 'lie' by use of synonyms such as 'falsification,' 'falsehood,' 'misrepresentation,' 'fib,' 'prevaricate,' 'equivocate,' 'falter,' seeking to avoid full blunt import." *Mitchell v. John Wiesner, Inc.*, 923 S.W.2d 262, 264-65 (Tex. App.—Beaumont 1996, no pet.) (Walker, J., dissenting).

distinction for Sixth Amendment purposes between failing to file a notice of appeal and failing to prosecute the appeal after notice thereof has been filed, thereby abandoning the appeal—in either circumstance, the defendant is "denied the assistance of counsel altogether." *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000).

Absent further explanation, the record suggests at least two significant and professionally unreasonable decisions on the part of counsel; that is, counsel's failure to argue Fanfan error on direct appeal, and his failure to prosecute the appeal altogether.[5] These decisions were professionally unreasonable even if Petitioner, on subsequent collateral attack, would be unable to satisfy the prejudice prong of the *Strickland* analysis, as is the case regarding Fanfan error. As such, the Court cannot help but notice that counsel, rather than raising the strongest claims available to Petitioner—ineffective assistance claims that would require counsel to impugn his own performance—he advances a claim that is non-cognizable on collateral attack.

The primary reason why ineffective assistance claims are entertained on collateral attack is because of the obvious conflict of interest presented to trial counsel in attempting to win relief for his client on this ground. That is, the judicial system cannot realistically expect an attorney to zealously attempt to convince an appellate court of his own ineffectiveness. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 505-06 (2003); *Riascos-Prado v. United States*, 66 F.3d 30, 34-35 (2d Cir. 1995). Thus, in cases where the viability of an ineffective

---

[5] Although the first error may seem subsumed into the second, they are in fact two distinct errors. As *Flores-Ortega* teaches, an attorney's failure to prosecute an appeal, *regardless of whether a viable ground for an appeal exists*, is ineffective assistance in-and-of itself. 528 U.S. at 483.

6

assistance claim depends on an attorney's willingness to emphasize his own shortcomings, the reliability of the supposedly adversarial proceeding is understandably questioned.[6]

The Court is fully aware that the type of conflict of interest it describes above is not of Sixth Amendment severity, since there exists no constitutional right to representation on collateral attack. However, the crux of the matter is that the Court is forced to ignore what, at the moment anyway, appears to have been an unconstitutional denial to Petitioner of the appellate process because his attorney never raises the issue. To the extent that a potential conflict of interest explains the omission of this argument from Petitioner's brief—and that extent is currently unclear—the Court can only wonder how present counsel's willingness to represent Petitioner on collateral attack precludes relief to which Petitioner might otherwise be entitled.

Dismissal of a § 2255 motion is warranted when "after prompt review of the files, records, transcripts, and correspondence relating to the judgment under attack, it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . ." 28 U.S.C. § 2255 Proc. R. 4(b). Although Rule 4(b), read literally, seems to allow for dismissal only if the Court finds that the petitioner is not entitled to relief, regardless of what claims the petitioner expressly raises, Rule 2(c) of the Rules Governing § 2255 Proceedings clarifies the meaning of Rule 4(b); a § 2255 petition must, among other things, "(1) specify all the *grounds* for relief available to the moving party; [and] (2) state the facts supporting each *ground* . . . ." (emphasis added).

Petitioner has failed to specify any "ground" that would entitle him to relief. Since the only claim Petitioner raises is not cognizable on collateral attack, it "plainly appears from the

---

[6] Additionally, as a general ethical matter, Comment 5 to Texas Disciplinary Rule of Professional Conduct 1.06 states that a "lawyer's own interests should not be permitted to have an adverse effect on representation of a client."

7

face of the Motion" that Petitioner is not entitled to relief. Accordingly, his Petition for Writ of Habeas Corpus [Pursuant to 28 U.S.C. § 2255] is **DISMISSED**. However, should Petitioner seek one, a certificate of appealability is **GRANTED**.

IT IS SO ORDERED.

Done this 20th day of April, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**